TONY ONLEY, Plaintiff v. NATIONWIDE MUTUAL INSURANCE COMPANY and EMPLOYERS MUTUAL CASUALTY COMPANY, Defendants

No. COA94-804

(Filed 16 May 1995)

1. **Insurance § 528 (NCI4th)— UIM coverage—intrapolicy and interpolicy stacking allowed**

   N.C.G.S. § 20-279.21(b)(3) and (4), as they were in effect for this case, permitted plaintiff, who was a resident of the households of both his parents and his grandparents, to intrapolicy stack the UIM coverage provided in his parents' policy and to interpolicy stack the UIM limits of his grandparents' policy on top of the limits of his parents' policy for the purpose of determining whether the tortfeasor's vehicle was an underinsured vehicle.

   **Am Jur 2d, Automobile Insurance § 322.**

   **Combining or "stacking" uninsured motorist coverages provided in separate policies issued by the same insurer to different insureds. 23 ALR4th 108.**

2. **Insurance § 528 (NCI4th)— two UIM carriers—pro rata credit for payment from tortfeasor's carrier**

   Where two UIM carriers provide coverage in different amounts, they are to share pro rata a credit for payment made by the tortfeasor's insurance carrier.

   **Am Jur 2d, Automobile Insurance § 322.**

   **Combining or "stacking" uninsured motorist coverages provided in separate policies issued by the same insurer to different insureds. 23 ALR4th 108.**

Appeal by defendants from order entered 5 May 1994 in Mecklenburg County Superior Court by Judge Loto G. Caviness. Heard in the Court of Appeals 18 April 1995.

ONLEY v. NATIONWIDE MUTUAL INS. CO.

[118 N.C. App. 686 (1995)]

*Parker, Pollard & Brown, P.C., by George C. Piemonte, for plaintiff-appellee.*

*Baucom, Claytor, Benton, Morgan, Wood & White, P.A., by Rex C. Morgan, for defendant-appellant Nationwide Mutual Insurance Company.*

*Caudle & Spears, P.A., by L. Cameron Caudle, Jr. and Timothy T. Leach, for defendant-appellant Employers Mutual Casualty Company.*

GREENE, Judge.

Defendants, Nationwide Mutual Insurance Company (Nationwide) and Employers Mutual Casualty Company (Employers) appeal from an order entered 5 May 1994 in Mecklenburg County Superior Court allowing Tony Onley's (plaintiff) motion for summary judgment in his declaratory judgment action to determine entitlement to underinsured motorist (UIM) coverage.

The parties stipulated to the following facts: On 24 January 1988, plaintiff was operating a 1984 Chevrolet automobile owned by Shawn Bonner with the knowledge and consent of its owner when he was involved in a collision with a 1979 Chevrolet automobile owned by William Worthen and being operated by Ruth Worthen. At the time of the accident, the Worthen automobile was insured by St. Paul Fire & Marine Insurance Company (St. Paul) which paid its policy limits of $100,000 to plaintiff. Also at the time of the accident, plaintiff was twenty-two years of age and resided with his parents Robert and Barbara Onley. Plaintiff's parents had in effect at the time of the accident an insurance policy with Nationwide which provided UIM coverage in the amount of $100,000 per person with a limit of $300,000 per occurrence and insured two separate vehicles. Plaintiff's grandparents, Walter and Lucille Reynolds, had in effect at the time of the accident an insurance policy with Employers which provided UIM coverage in the amount of $50,000 per person with a limit of $100,000 per occurrence and insured two separate vehicles.

Under both the Nationwide and Employers' policies, an insured person under Uninsured/Underinsured motorist (UM/UIM) coverage is "You or any family member." The term "family member" is defined as "a person related to you by blood, marriage or adoption who is a resident of your household." There are no exclusions under the poli-

cies which would exclude plaintiff from coverage. Both policies also contain the following:

> **OTHER INSURANCE** If this policy and any other auto insurance policy issued to you apply to the same accident, the maximum limit of liability for your injuries under all the policies shall not exceed the highest applicable limit of liability under any one policy.

> In addition, if there is other applicable similar insurance we will pay only our share of the loss. Our share is the proportion that our limit of liability bears to the total of all applicable limits. However, any insurance we provide with respect to a vehicle you do not own shall be excess over any other collectible insurance.

In December 1993, plaintiff filed a complaint pursuant to the North Carolina Declaratory Judgment Act in Mecklenburg County Superior Court and requested the court to enter an order declaring the rights of the parties "with respect to the personal automobile liability insurance policies referred to and for a declaration that the total policies therein constitute 'stacking' coverage thereby insuring the Plaintiff to the extent of Three Hundred Thousand Dollars ($300,000.00) for any injuries resulting from the aforementioned collision." In March 1994, plaintiff and both defendants filed motions for summary judgment. In support of his motion, plaintiff filed affidavits from his grandparents stating that plaintiff resided with them at the time of the accident.

By order filed 11 May 1994, the court denied defendants' motions for summary judgment, allowed plaintiff's motion for summary judgment, and ordered that defendants "are entitled to a credit for the amount of paid by the tortfeasor's insurance carrier to be divided one third (1/3) to Defendant, Employers, and two thirds (2/3) to Defendant, Nationwide" and "[a]s between the Defendants, any liability to the Plaintiff for UIM coverage shall be on a pro[ ]rata basis upon the ratio of each defendant's UIM limits to the total UIM coverage available." In reaching this decision, the trial court necessarily determined that the tortfeasor's vehicle was an "underinsured highway vehicle" within the meaning of Section 20-279.21(b)(4), and plaintiff was a person living in both his parents' and grandparents' households so that he was entitled to intrapolicy and interpolicy stack the UIM coverages of his parents' and grandparents' policies.

ONLEY v. NATIONWIDE MUTUAL INS. CO.

[118 N.C. App. 686 (1995)]

The issues presented are whether (I) plaintiff is entitled to both intrapolicy and interpolicy stack the UIM coverages in his parents' and grandparents' policies for the purpose of determining whether the tortfeasor's vehicle is an "underinsured highway vehicle" under Section 20-279.21(b)(4); and (II) two different insurance companies providing UIM coverage in different amounts should receive equal credit for any payment made by the tortfeasor's insurance carrier.

I

[1] Nationwide and Employers do not dispute that plaintiff was a resident of both his parents' household and his grandparents' household at the time of the accident. Nationwide, however, contends plaintiff should not be allowed to intrapolicy stack the UIM coverage provided in his parents' policy, and Employers argues plaintiff is not entitled to interpolicy stack the UIM limits of the Employers policy "on top of the limits of the Nationwide policy" for the purpose of determining whether the tortfeasor's vehicle is an "underinsured highway vehicle." We disagree with both arguments.

North Carolina General Statute §§ 20-279.21(b)(3), (4), as they were in effect for this case, "required that a person living in the household with relatives be allowed to aggregate or stack, both interpolicy and intrapolicy, the underinsured motorist coverages of the relatives and to collect on those stacked coverages." *Mitchell v. Nationwide Mut. Ins. Co.*, 335 N.C. 433, 435, 439 S.E.2d 110, 111 (1994) (*citing Harrington v. Stevens*, 334 N.C. 586, 434 S.E.2d 212 (1993)). It follows that plaintiff is entitled to aggregate, both interpolicy and intrapolicy, the UIM coverages in his parents' and grandparents' policies in determining whether the tortfeasor's vehicle is an underinsured highway vehicle under Section 20-279.21(b)(4). Intrapolicy stacking of Nationwide's UIM coverage of $100,000 per person provides $200,000 in UIM coverage available to plaintiff because this policy covered two separate vehicles. Intrapolicy stacking of Employers' UIM coverage of $50,000 per person provides $100,000 in UIM coverage available to plaintiff because this policy covered two separate vehicles. Interpolicy stacking of the UIM coverages available to plaintiff therefore provides him with a total UIM coverage of $300,000. Because the tortfeasor's policy had a liability limit of $100,000 and was therefore less than the applicable limits of UIM coverage for plaintiff at the time of the accident, the tortfeasor's vehicle constituted an "underinsured highway vehicle" under Section 20-279.21(b)(4).

II

**[2]** In this case, the language in both the Nationwide and Employers' policies mandates under the "other insurance" provision that "any insurance we provide with respect to a vehicle you do not own shall be excess over any other collectible insurance." These identical "excess" clauses contained in both Nationwide and Employers' policies "are deemed mutually repugnant and neither excess clause will be given effect"; therefore, "we read the policies as if those clauses were not present." *North Carolina Farm Bureau Mut. Ins. Co. v. Hilliard,* 90 N.C. App. 507, 511, 512, 369 S.E.2d 386, 388, 389 (1988); .*see also* 7A Am. Jur. 2d *Automobile Ins.* § 434 (1980) (if literal effect were given to both "excess clauses," neither policy would cover loss, thereby producing "an unintended absurdity"). We are then left with the language in both policies under the "other insurance" provision that "we will only pay our share of the loss. Our share is the proportion that our limit of liability bears to the total of all applicable limits." This language compels the conclusion that Nationwide and Employers must share any liability to plaintiff for UIM coverage on a pro rata basis. *Hilliard,* 90 N.C. App. at 512, 369 S.E.2d at 389. This holding is not disputed by Nationwide or Employers.

North Carolina General Statute § 20-279.21(b)(4) in effect at the time of the accident provides that UIM coverage does not apply until

> all liability bonds or insurance policies providing coverage for bodily injury caused by the ownership, maintenance, or use of the underinsured highway vehicle have been exhausted. . . . Underinsured motorist coverage shall be deemed to apply to the first dollar of an underinsured motorist coverage claim beyond amounts paid to the claimant pursuant to the exhausted liability policy.

> In any event, the limit of underinsured motorist coverage applicable to any claim is determined to be the difference between the amount paid to the claimant pursuant to the exhausted liability policy and the total limits of the owner's underinsured motorist coverages provided in the owner's policies of insurance.

N.C.G.S. § 20-279.21(b)(4) (1989). Under the terms of the statute, a UIM carrier is entitled to credit for the amounts paid to a claimant under the tortfeasor's liability policy. *See Sproles v. Greene,* 100 N.C. App. 96, 102-03, 394 S.E.2d 691, 695 (1990) (UIM carriers should

ONLEY v. NATIONWIDE MUTUAL INS. CO.

[118 N.C. App. 686 (1995)]

receive credit for amounts paid by tortfeasor's carrier because claimant, under terms of 1983 version of G.S. 20-279.21(b)(4) should not collect more than his actual loss), *aff'd in part, rev'd in part on other grounds*, 329 N.C. 603, 407 S.E.2d 497 (1991).

Employers, citing *Sproles*, contends that any recovery from the tortfeasor's carrier must be credited equally between Nationwide and Employers to reduce the exposure of their UIM liability by the same amount, and the new UIM limits resulting from the credit are then used to determine what the pro rata basis of sharing UIM coverage will be. Under Employers' position, both it and Nationwide would be credited with $50,000 because St. Paul paid plaintiff $100,000; therefore, Nationwide's available UIM coverage would be reduced from $200,000 to $150,000, and Employers' available UIM coverage would be reduced from $100,000 to $50,000. The total UIM coverage available would then be $200,000, and in comparing each of the defendant's UIM limits after giving credit for the St. Paul payment, Nationwide would be responsible for seventy-five percent of any entitlement plaintiff has to UIM coverage, and Employers would be responsible for twenty-five percent of any entitlement plaintiff has to UIM coverage. Employers' reliance on *Sproles*, however, is misplaced.

In *Sproles*, there were two UIM coverages of $100,000 each available to the plaintiff, and the tortfeasor's insurance carrier had paid plaintiff $25,000. This Court held that "the aggregate amount of $200,000 should have been reduced by $25,000, the only payment [the torfeasor's carrier] made, rather than $50,000; the maximum liability of each carrier should have been reduced by $12,500 rather than $25,000." *Id.* at 103, 394 S.E.2d at 695. *Sproles* therefore determined that when there are two insurance companies providing UIM coverage *in the same amount*, and the tortfeasor's insurance company has paid the plaintiff $25,000, the maximum liability of each UIM carrier should have been reduced equally by $12,500. *Id.* This holding does not mandate that where two UIM carriers provide coverage *in different amounts*, they are required to share equally a credit for payment made by the tortfeasor's insurance carrier. Indeed, a proper reading of *Sproles* is that the multiple UIM carriers are to share the credit pro rata. This is consistent with the language of Nationwide and Employers' policies which both require sharing the loss based on the proportion their respective liabilities bear to the "total of all applicable limits." Furthermore, to share the liability in proportion to the coverage but not the credit in a like manner is irrational.

Based on these principles, because "the total of all applicable limits" for UIM coverage is $300,000, representing $200,000 from Nationwide and $100,000 from Employers, and Nationwide's [UIM] limit represents two-thirds of "all applicable [UIM] limits," it is entitled to a credit of $66,666.67, representing two-thirds of the $100,000 paid by St. Paul to plaintiff, and Employers is entitled to a credit of $33,333.33, which is one-third of St. Paul's payment to plaintiff. The trial court therefore correctly divided credit for St. Paul's payment between Nationwide and Employers. Under the same principles, the trial court correctly concluded that any future entitlement of plaintiff to UIM coverage should be shared on a pro rata basis based on "the ratio of each defendant's UIM limits to the total UIM coverage available." For these reasons, plaintiff has met its summary judgment burden of showing a lack of any triable issue, *Roumillat v. Simplistic Enters., Inc.*, 331 N.C. 57, 63, 414 S.E.2d 339, 341-42 (1992) (party moving for summary judgment has burden to show lack of any triable issue), and the decision of the trial court is

Affirmed.

Judges LEWIS and MARTIN, MARK D., concur.